## Burchfield v. Asher, et al.

(Decided November 29, 1927.)

Appeal from Bell Circuit Court.

1. Venue.—Though venue of action for sale of estate for indivisibility is local, court of county other than that in which land lay nevertheless had jurisdiction to order sale, under Ky. Stats., section 1094, where all parties consented, to change of venue for convenience of counsel from court of proper county, and where judgment directed sale to be had at county seat of county containing land.

2. Partition.—In suit under Civil Code of Practice, section 490, subsection 2, for sale of jointly owned real estate on ground of indivisibility, guardian ad litem for infant defendant was not required to execute bond under provisions of section 493 before entry of order for sale.

3. Partition.—Finding of chancellor that property was not. susceptible of advantageous division held sustained by evidence, in action under Civil Code of Practice, section 490, subsection 2, for sale of undivided interests in inaccessible and undeveloped timber and mineral lands.

4. Partition.—Finding of chancellor that sale to cotenant of undivided interests in land at 86 per cent. of appraised valuation, in suit under Civil Code of Practice, section 490, subsection 2, was not subject to be set aside for inadequacy of consideration, or fraud, or as detrimental to interests of minor defendant, held sustained by evidence showing land was undeveloped and was declining rather than increasing in value.

5. Judicial Sales.—Mere inadequacy of consideration is not sufficient ground on which to set aside a decretal sale, though if inadequacy exists very slight evidence of fraud in connection therewith is sufficient to set aside sale.

6. Appeal and Error.—Purchaser at sale of land for indivisibility, under Civil Code of Practice, section 490, subsection 2, held not precluded, under section 757, from asserting cross-appeal from judgment by fact that sale bond to him as purchaser of property was credited by value of acreage awarded in judgment, where he merely insisted that he was not allowed full amount of his fractional interest in land sold.

7. Partition.—In action for sale on ground of indivisibility, under Civil Code of Practice, section 490, subsection 2, findings as to fractional interests of parties in real estate involved held erroneous for failure to allow for plaintiff's purchase of part of tract at sale under judgment previously entered.

8. Appeal and Error.—Where, in fixing rights of parties in suit for sale of property for indivisibility, under Civil Code of Practice, sec. 490, subsec. 2, increased acreage was allowed tenants in common in place of damages for breach of warranty without objection being made, persons receiving allowance could not complain on appeal.

JAMES H. JEFFRIES for appellant.

JOHN S. CARROLL and T. KELLY for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—
Affirming in part and reversing in part.

A. J. Asher and his infant granddaughter, Willie Jean Hodges, Mrs. Virginia Burchfield, and her children owned an undivided interest in seven tracts of unimproved mineral and timber lands in Leslie county, lying in a body and aggregating 2,311.46 acres. Fractional interests in some of these lands were owned by A. B. and J. M. Culton and Mary Tarvin.

A. J. Asher filed suit against the other parties named for the sale of all the lands in a body on the ground of indivisibility. The Cultons and Burchfields defended. A guardian ad litem was regularly appointed for the infant defendant, Willie Jean Hodges, and answer was filed by him. The case came on to be heard before a special judge of the Leslie circuit court, and, pending the hearing, the order of submission was set aside, and by agreement of the parties the case was transferred to the Bell circuit court, where a second guardian ad litem was appointed for the infant. The Burchfields entered motion to transfer the case back to the Leslie circuit court. Pending this, an agreement was reached between them and A. J. Asher and their motion was withdrawn. The case was then submitted and a decree rendered adjudging a sale on the ground of indivisibility and fixing the proportionate shares of the parties. A. J. Asher excepted to the judgment. The land was sold in accordance with the judgment, and A. J. Asher became the purchaser at the price of $40,000. The Burchfields and Cultons filed exceptions to the report of sale, which were overruled, and they appeal. Subsequently A. J. Asher was granted a cross-appeal in which he is claiming that the court erred in fixing the proportionate shares of the parties to the land in question, and the cross-appellees have entered motion to dismiss this appeal on the ground that he has accepted the provisions of the judgment in his favor and is precluded from appealing.

As will later appear, the Burchfields have a contract with A. J. Asher for a reconveyance to them of their interest under certain conditions, but they fear that the judgment is not binding on the infant Willie Jean Hodges and are raising certain questions in her favor. The guardian ad litem of the infant in the lower court strongly approves the judgment, but the guardian ad litem appointed in this court prays a cross-appeal and presents additional reasons for the judgment being set aside. The various questions raised for determination may be summarized thus: (1) The Bell circuit court was without jurisdiction to order a sale of lands located in Leslie county. (2) Failure of guardian to execute bond in accordance with the provisions of section 493, Civil Code. (3) The lands sold could have been divided without materially impairing their value. (4) Inadequacy of consideration, supplemented by a collusive agreement

between A. J. Asher and the Burchfields tending to restrict fair bidding at the sale.

First. It may be conceded that the venue of an action for the sale of real estate on the ground of indivisibility is local, and that such suit cannot be maintained except in the county in which the land or part thereof is located. However, it appears that in this case the suit was properly brought and progressed to submission in Leslie county where the land lies, and that all of the parties consented to a change of venue to Bell county. It appears that this was done for convenience of counsel, and it is not charged that there was any ulterior motive in so doing. We think this permissible, under section 1094, Ky. Statutes, and, as the judgment directed a sale to be had at the county seat of Leslie county by the commissioner of the Leslie circuit court and in other respects was regular, it cannot be said the court acted without jurisdiction.

Second. The suit was brought under section 490, subsec. 2, of the Civil Code, for the sale of jointly owned real estate on the ground of indivisibility. In such cases it is well settled that the guardian is not required to execute bond, under the provisions of section 493, Civil Code, before the order of sale is entered.

Third. The evidence is conflicting as to whether the property was susceptible of advantageous division. The evidence for the Cultons and Burchfields indicates that the shares were sufficiently large to authorize a division, while that of the plaintiff is to the effect that such lands are valuable only for timber and minerals; that there is neither rail nor water transportation into or out of Leslie county, leaving it inaccessible and undeveloped; that when segregated in small bodies there is very little demand for such lands and values are uncertain; that when congregated in large bodies they are more attractive to purchasers who are able to await development and therefore are of relative higher value, and in view of the conflicting evidence on this point we are not disposed to disturb the judgment of the chancellor who is familiar with local conditions.

Fourth. As to inadequacy of consideration. The land brought $17.30 per acre. It was appraised at $20 per acre, one of the appraisers being the tax commissioner of Leslie county. A number of witnesses fix its value at from $20 to $25 per acre. It is further shown

that T. J. Asher contracted by title bond with A. J. Asher to purchase a one-half interest in his entire holdings of 40,000 acres at $30 per acre, and that A. J. Asher contracted with the Burchfields to either buy the land or make it bring $30 per acre; and, in the event it was purchased by him at a smaller figure and sold under an option that he had with Henry Ford, that Asher would pay Burchfield on his acreage the price paid by Ford, and in the event he (Asher) did not sell it to Ford that he would convey the Burchfields an acreage equivalent to the amount of their fractional interest in the land, this contract being evidenced by a writing signed by the parties. The Burchfields are still willing for that contract to be consummated, but are apprehensive that the described sale is not valid as to the infant Willie Jean Hodges, and that she may later appeal and annul the sale, and it is their desire to remove this cloud from Asher's title, it being evident that they do not consider the sale price adequate and are relying on a conveyance of this acreage from Asher. On the other hand, Asher and his witnesses show that the price was the fair and reasonable value of the land. He had an especially favorable offer from Ford and was anxious to make the deal and needed this land for that purpose. For this reason he was willing to give more than its ordinary value and was also willing to reconvey the Burchfields' interest if that deal was not consummated, and when it fell through the title bond between him and his brother was canceled.

It is well settled that mere inadequacy of consideration is not a sufficient ground upon which to set aside a decretal sale, though if inadequacy exists very slight evidence of fraud in connection therewith is sufficient for that purpose. The questions here to be determined are, Do both fraud and inadequacy exist? and are the infant's rights prejudiced? The Burchfield contract was certainly favorable to them; however, their opinion as to the value of the land is not conclusive upon the court. This contract did not restrict bidding, and it appears that the sale was conducted fairly and in accordance with law and the judgment of the court. The land brought 86 per cent. of the appraisement. No upset bid is now offered. The land is yielding no revenue and is burdened with the payment of taxes. Development is far in the future, and it is shown that such lands in this remote section are declining rather than enhancing in value. Espe-

cially is this true since adverse rulings as to freight dif-
erentials in coal shipped from this section have been
made by the Federal Interstate Commerce Commission.
The local guardian ad litem of the infant, who was well
acquainted with the situation and the lands involved, in-
sists that her rights are best preserved by upholding
the sale. The judge of the circuit court, who has equal
opportunities for personal knowledge, so held, and, look-
ing alone to the interest of the infant, we are unable to
say that she would be benefited by having the sale set
aside; indeed, another sale might be at a much less price
with a net loss of the interest on the sale bonds hereto-
fore executed, hence the judgment of the chancellor in
overruling the exceptions to the report of sale is sus-
tained.

Fifth. There was an issue between the parties as
to the acreage represented by their respective fractional
interests, and Asher is insisting that the court erred in
adjudging too much acreage to the other parties and too
little acreage to him. At the decretal sale Asher as pur-
chaser executed a sale bond for the purchase price. On
his motion this bond was credited by the value of the
acreage awarded him in the judgment, and it is argued
that, having accepted the benefits of the judgment, he is
estopped from denying its efficacy, and on this ground a
motion has been entered to dismiss his cross-appeal. It
will be observed, however, that Asher is not complaining
of the sale, but merely insisting that he was not allowed
the full amount of his fractional interest in the land sold.
This position is not inconsistent with his desire to uphold
the judgment of sale and is permissible under the ex-
press provisions of section 757 of the Civil Code. See
Combs v. Bates, 150 Ky. 188, 150 S. W. 20; Nicholson v.
Alvey, 150 Ky. 343, 150 S. W. 364; Cravens v. Merritt,
178 Ky. 727, 199 S. W. 785; Hendrickson v. New Hughes
Jellico Coal Co., 172 Ky. 568, 189 S. W. 704. The motion
to dismiss the cross-appeal is therefore overruled.

Sixth. Considering the question raised on cross-
appeal, the sale included seven tracts with the following
acreage: (1) 1,472.45 acres, (2) 105.6 acres, (3) 240.67
acres, (4) 60.50 acres, (5) 155.58 acres, (6) 85.11 acres,
(7) 192.6 acres; making a total of 2,311.97. The Cul-
tons, who originally had title to the greater part of all
these lands, sold and conveyed to A. J. Asher and W. J.
Hodges (father of Willie Jean) by deed of general war-

ranty a two-thirds undivided interest in tracts 1 and 2, and a one-half undivided interest in tracts Nos. 3, 4, 5, 6, and 7 as an entirety, the fractional interests thus conveyed being equivalent to 1,515.21 acres. Later, Asher and Hodges purchased from A. B. Cornett a two forty-second interest in tracts 1 and 2, and a one-fourteenth undivided interest in tracts 3, 4, 5, and 6, this interest being equal to 113.5 acres, which increased their holding to an equivalent of 1,628.71 acres or 814.36 acres each. Later, in the suit of A. B. Asher et al. v. J. M. Culton, etc., in the Leslie circuit court, a judgment was entered in favor of plaintiffs for $1,908.51, and a decree for the enforcement of the lien in all the right, title, interest, claim, and share of the defendants J. M. Culton, J. G. Hoskins, A. J. Asher, and W. J. Hodges in the land described in tract No. 1, and possibly including some of the other tracts, and directing a sale of so much of it as might be necessary to satisfy the judgment and costs. In accordance with that judgment the master commissioner made a sale of 200 acres lying in the boundary of tract No. 1, and A. J. Asher became the purchaser. By deed dated May 19, 1909, the master conveyed the interest of all these parties, including W. J. Hodges, to Asher, no definite boundaries being assigned except that it lay within the tract mentioned.

A. J. Asher is now claiming that by virtue of this sale his acreage should be increased by 200 acres and the Cultons' decreased by that amount, but is making no claim as against the interest of Willie Jean. In this respect it appears that at the time of that sale A. J. Asher and W. J. Hodges owned a ten-fourteenths interest in this land which was in lien for plaintiff's debt, and that it was sold together with Cultons' interest, and that all of this was conveyed to him except his own interest to which he already had title. It is manifest, therefore, that the Cultons' interest in the 200 acres thus sold was only four-fourteenths, or equivalent to 57 acres, which would decrease the Culton holding to that extent and increase A. J. Asher's holding to 871.3 acres. W. J. Hodges' interest in 200 acres also passed by this conveyance, but, as stated above, A. J. Asher is making no contention as to it against Willie Jean. It further appears that the Burchfields have title to a one-sixth interest in tracts Nos. 1 and 2 and a one-fourth interest in tracts 3, 4, 5, and 6, and a one-eighth interest in tract

No. 7, making their total holdings 422.48 acres, and that the remainder belongs to the Cultons. However, as suggested above, the Cultons sold all of tract No. 7 to Asher by covenant of general warranty, and in the above estimate he is allotted the entire tract, though it is admitted that the Burchfields had superior title to a one-eighth interest equaling 24.8 acres, and there is a duplication of this one-eighth interest. Perhaps it would have been proper for the court to have deducted this 24 acres from. A. J. Asher's and Willie Jean Hodges' interests and have reimbursed them for this loss by requiring the Cultons to refund the purchase price, with interest, which is the measure of damage in breach of warranty, but without objection the total acreage of Asher, Hodges and Burchfield was permitted to stand and the 24-acre deficit was deducted from the Cultons' interest, and, as they are satisfied with this, Asher cannot complain. This would leave the fractional interest of each equivalent to the following acreage: A. J. Asher, 871.3; Willie Jean Hodges, 814.3; Burchfields, 422.48; and Cultons, 203.89. The finding of the court being A. J. Asher, 860.48; Willie Jean Hodges, 811.47; Burchfields, 446.53; Cultons, 193.49. To the extent indicated above, we think this finding erroneous. It is also intimated that the Intermountain Coal Company has a prior claim on 42 additional acres within the boundary sold, but there is no definite proof of this.

Wherefore the judgment is affirmed on the appeals of the Burchfields and of Willie Jean Hodges, and reversed on the cross-appeal of A. J. Asher, with directions to correct the judgment in conformity with the views above expressed.